# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CIVIL ACTION NO. 05-0069** |
| **VERSUS** | * | **JUDGE JAMES** |
| **EDDIE FERRAND, Individually and d/b/a/ MR. ED'S TAX SERVICE, GLENDA FAYE ELLIOTT, MICHAEL DWAYNE BELL, WILLIAM NATHANIEL KENNEDY, and JHACOBY LaKELSEY TOSTON** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion for Summary Judgment filed by plaintiff, United States of America ("Government"). (Document No. 38). The motion is unopposed.[1] For reasons stated below, it is recommended that the motion be **GRANTED.**

## BACKGROUND

The lengthy and detailed facts of this case are fully set out in the Government's motion and, therefore, are only briefly summarized below. On January 18, 2005, the Government filed this action seeking a permanent injunction against Eddie Ferrand ("Ferrand"), William Nathaniel Kennedy ("Kennedy"), and Glenda Faye Elliott ("Elliott") (collectively "Defendants")[2] to prevent

---

[1] Although one of the *pro se* defendants, William Nathaniel Kennedy, filed a purported opposition brief, it fails to raise a single credible argument or, more importantly, to allege any contradictory facts. Therefore, the Government's motion is treated as unopposed from a factual basis.

[2] In addition to these defendants, the Government also named Michael Dwayne Bell ("Bell") and Jhacoby LaKelsey Toston ("Toston") as defendants. However, the Government voluntarily dismissed its claim against Bell on July 26, 2005, and negotiated a consent judgment with Toston, which the Court entered on August 18, 2005.

them from acting as income tax return preparers.[3]  (Rec. Doc. 1).  The Defendants are also the subject of a criminal indictment by the Government for tax fraud and conspiracy to commit tax fraud.  (Case Number 04-30050).   In the Government's civil action, the Defendants are alleged to have engaged in certain enumerated conduct that gives rise to a right to injunctive relief under 28 U.S.C. § 7407.  Furthermore, pursuant to § 7407(b), the Government claims that an injunction merely prohibiting the Defendants from engaging in the enumerated conduct would not sufficiently prevent them from interfering with the Internal Revenue Service's ("IRS") proper administration of the tax laws.  Thus, the Government seeks broader relief, namely a permanent injunction barring the Defendants from acting as income tax preparers.[4]

The Government's request for an injunction stems from the operation of "Mr. Ed's Tax

---

[3] The Government bases its request for a permanent injunction under sections 7402 and 7407 of the Internal Revenue Code ("Code" or "I.R.C.").  Section 7402(a), which permits a district court to grant injunctions "as may be necessary or appropriate for the enforcement of the internal revenue laws," is a much more general basis for an injunction than section 7407, which permits a district court to grant injunctions in specific instances.  While the undisputed facts of this case clearly bring it within the purview of section 7402(a), the undersigned recommends that the Court grant the Government's requested injunction under the more precise and exacting language of section 7407.

[4] In addition to framing its request for an injunction under section 7407 of the Code, the Government maintains that the Defendants' failure to respond to the Court's discovery orders and appear for depositions entitles it to default judgment under Rule 37(b)(2) of the Federal Rules of Civil Procedure.  Alternatively, the Government requests that the Court order the alleged facts established and prohibit the Defendants from opposing its motion for summary judgment.  Considering that the defendants are *pro se* and the Court's wide latitude in imposing discovery sanctions, the undersigned recommends that the Government's request for default judgment be denied.  The undersigned does note, however, that the movant under an unopposed motion for summary judgment benefits from having its evidence and alleged facts accepted as true.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Uniform Local Rule 56.2E&W.  Furthermore, because the Defendants, who are currently under criminal indictment, would likely invoke their Fifth Amendment rights in response to many of the Government's discovery requests in this case, the nescient effects of their failure to participate in discovery are substantially reduced.  Indeed, the invocation of Fifth Amendment rights would simply give rise to an adverse presumption in this civil matter.

Service," a local tax return preparation business owned and operated by Ferrand, one of the defendants.

## LAW AND ANALYSIS

<u>Summary Judgment Standard</u>

Summary judgment is appropriate when the evidence before the Court shows that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. Rule 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" under this standard if the non-moving party has presented sufficient evidence such that a reasonable jury could return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden in summary judgment and must demonstrate through portions of the pleadings, depositions, answers to interrogatories, admissions and/or affidavits that no genuine issue of material fact exists. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has successfully demonstrated the absence of a genuine issue of material fact, the burden shifts to the non-moving party to show the opposite. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In doing so, the non-moving party may not merely rely on the allegations and conclusions contained within the pleadings; rather, he "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). Furthermore, these specific facts must be shown through something more than "some metaphysical doubt as to the material facts, by conclusory unsubstantiated allegations, or by a mere scintilla of evidence." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted).

While the facts are to be reviewed with all inferences drawn in favor of the non-moving

party, factual controversies are resolved in favor of the non-movant only when there is an actual controversy. That is, when both parties have submitted evidence of contradictory facts. *McCallum Highlands, Limited v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995). In this case, the Defendants have failed to submit evidence of any facts contradictory to those submitted by the moving party. Therefore, this Court must accept the evidence presented by the defendant and the statements of undisputed facts as true. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); Uniform Local Rule 56.2E&W. Thus, for purposes of this motion, those facts are deemed admitted. Those facts are, briefly, as follows:

Ferrand, along with two employees, Kennedy and Elliott [5], willfully engaged in the organized practice of entering fraudulent and fictitious entries on customers' income tax returns. Specifically, an IRS audit revealed that, on customers' original and amended income tax returns, the Defendants would report business losses in Schedule C for businesses that did not exist; enter inflated or fictitious deductions in Schedule A for medical or dental expenses, charitable contributions, un-reimbursed employee business expenses, and other miscellaneous deductions; and would claim false dependents. The primary aim of the Defendants' actions, apparently, was to add enough fictitious deductions and losses to equal customers' taxable income. This way, customers' taxable income would be so low it would appear as if the customers had little or no tax liabilities and, thus, the IRS would refund nearly all of the withholdings taken from the customers' paychecks during the year.

The Defendants' fraudulent conduct primarily occurred in 2000 and 2001 when, according to IRS audits, the Defendants prepared 2,386 and 4,425 original income tax returns, respectively.

---

[5] In 2002, Elliott opened her own tax return preparation business known as "F&F Tax Service."

Between those years, the Defendants also prepared a substantial number of amended income tax returns, although the IRS does not yet know exactly how many. Nearly all of these income tax returns, original and amended, contain errors or fictitious entries of the kind described above. Using the average amount of tax that the Defendants' customers avoided paying, approximately $6,000 per return, the Government estimates that it has endured a tax loss of over $45 million.

Injunctions Under Section 7407

Upon the Government's request for an injunction and provision of proof by a preponderance of the evidence, section 7407 of the Code permits district courts "to enjoin any person who is an income tax preparer from further engaging in any [prohibited] conduct . . . or from further acting as an income tax return preparer." I.R.C. § 7407(a). The Government's burden of proof varies with the type and extent of the requested injunction. To obtain an injunction prohibiting a person from engaging in certain enumerated conduct, the Government must demonstrate the following: (1) that the person to be enjoined is an "income tax return preparer, as defined in section 7701 of the Code; (2) that the person has engaged in prohibited conduct enumerated in subsection (b); and (3) that injunctive relief is appropriate to prevent the recurrence of such conduct. *See id.* at (b)(1); *United States v. Ernst & Whinney*, 735 F.2d 1296, 1303 (11th Cir. 1984). To obtain a broader injunction prohibiting a person from acting as an income tax return preparer, in addition to the above requirements, the Government must demonstrate (1) that the person has "continually or repeatedly" engaged in the prohibited conduct and that (2) "an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of [the tax laws]." I.R.C. § 7407(b)(2). Despite section 7407's detailed language, it "does not alter the inherent authority of the courts to limit the scope and duration of any injunction as is deemed appropriate given the actions leading

to the request for injunctive relief." S. Rep. No. 94-938, pt. 1, at 359 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 3439, 3788 (Senate Finance Committee debate on Tax Reform Act of 1976, which implemented section 7407).

Income Tax Return Preparer

The first requirement for an injunction under section 7407 is that the person being enjoined must be an income tax return preparer as defined in the Code. Section 7701 of the Code defines an income tax return preparer as "any person who prepares for compensation, or who employs one or more persons to prepare for compensation, any return of tax imposed by subtitle A or any claim for refund of tax imposed by subtitle A." I.R.C. § 7701(a)(36). A person need not complete every portion of a return to be considered an income tax return preparer; simply preparing a substantial portion of an income tax return or refund claim will suffice. *See id.*

The Government's evidence clearly demonstrates that Ferrand, the owner of "Mr. Ed's Tax Service," and Elliott and Kennedy, employees of the same, are income tax return preparers. In addition to providing numerous tax returns from customers of "Mr. Ed's Tax Service," which contain the Defendants' signatures in the section reserved for the preparer's signature, the Government has accompanied those returns with customers' declarations and an affidavit from Totson, a one-time co-defendant in this case. *See* Exhibit No. 3, 6, 7, 15, 20, 24. Those statements and affidavit reveal that each of the Defendants solicited customers with promises of large refunds, grossly understated the income on their original or amended returns, and then, when the customers questioned them, fraudulently told the customers that the IRS was an illegal organization or that only foreigners owed income taxes. *See* Exhibit No. 21, 22, 24. There is no doubt that the Defendants are income tax return preparers.

Engaged in Prohibited Conduct under 7407(b)(1)(A)-(D)

The second requirement for an injunction under section 7407 is that the person to be enjoined must have (1) engaged in any conduct subject to penalty under section 6694 or section 6695 of the Code; (2) misrepresented their eligibility to practice before the IRS, or otherwise misrepresented their experience or education as an income tax return preparer; (3) guaranteed the payment of any tax refund or the allowance of any tax credit; or (4) engaged in any other fraudulent or deceptive conduct which substantially interferes with the proper administration of the tax laws. I.R.C. § 7407(b)(1)(A)-(D). In the present case, the Defendants have engaged in conduct described in both of the above categories; they all engaged in fraudulent conduct that warrants a penalty under section 6694 and which substantially interfered with the proper administration of the tax laws, and Ferrand misrepresented his alleged prior employment with the IRS to customers and therefore engaged in conduct described in section 7407(b)(1)(B). *See* Exhibit No. 24, ¶ 7.

Section 6694 of the Code provides that an income tax return preparer shall pay a penalty of $1,000 for wilfully or recklessly understating an individual's tax liability.[6] *See* I.R.C. 6694(b). The legislative history of section 6694 sheds some light on what exactly constitutes a willful understatement:

> A willful understatement of tax liability includes situations where an income tax return preparer disregards facts supplied to him by the taxpayer (or others) in an attempt to reduce the taxpayer's liability. For example, if a taxpayer states to the return preparer that he has only two dependents, and the preparer, with full knowledge of that statement, reports six dependents on the tax return, a willful

---

[6] Section 6694 also imposes a penalty for any income tax return preparer who understates an individual's tax liability based on frivolous positions that do not have a realistic possibility for being sustained on the merits. *See id.* at (a). Although the undersigned finds that the Defendants violated subsection (b) by willfully understating their customers' tax liability, the undersigned notes that the Defendants asserted frivolous justifications, and often out-right fabrications, when customers inquired about the legality of their actions. This, at the very least, constitutes a violation of section 6694(a).

> attempt to understate tax liability has occurred. A willful attempt also occurs generally where an income tax preparer disregards certain items of income given to him by the taxpayer or other persons, or intentionally overstates items of deductions . . . . A willful understatement of tax liability can also include an intentional disregard of Internal Revenue Code rules and regulations. For example, an income tax return preparer who deducts all of a taxpayer's medical expenses, intentionally disregards the percent of adjusted gross income limitation, may have both intentionally disregarded Internal Revenue Code rules and regulations and willfully understated tax liability.

H.R. Rep. 94-658, at 279 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 2897, 3175.

The Government's evidence clearly demonstrates that the Defendants, despite questions from customers about the accuracy of their income tax returns, regularly understated customers' tax liabilities by, among other things, claiming false dependents, reporting fictitious business expenses and deductions, and inflating other income-reducing items. Of the examples of willful understatement of tax liability that Congress discussed above, the Defendants have engaged in nearly every one. They disregarded facts and income taxpayers reported; claimed false dependents; overstated deductions or, worse, created them out of thin air; and blatantly disregarded the Code and regulations. Furthermore, under the undisputed facts of this case, there is no doubt that the Defendants wilfully and intentionally committed these egregious acts. In fact, one former employee of "Mr. Ed's Tax Service" described how the primary goal was to create enough income reducing items - deductions, business expenses, and dependents - so that a customer's income was reduced to zero. *See* Exhibit 24, ¶¶ 2-5. The undersigned strains to think of a more flagrant example of wilfully understating an individual's tax liability.

In addition to willfully understating customers' tax liabilities, the Defendants' conduct also substantially interfered with the IRS's proper administration of the tax laws and therefore serves as another basis for an injunction under section 7407. The Defendants' insertion of fictitious expenses and deductions on nearly all of their customers' 2000 and 2001 income tax

8

returns has forced the IRS to expend valuable resources in auditing almost 7,000 tax returns, of which only a fraction have been completed. While the Government's estimated loss of $45 million may be somewhat high, even a fraction of that loss, combined with the administrative resources necessarily expended in prosecuting the Defendants, constitutes a substantial interference with the proper administration of the tax laws. *See United States v. Franchi*, 756 F. Supp. 889, 893 (W.D. Pa. 1991) (finding defendant's fabrication and inflation of expenses and deduction substantially interfered with administration of tax laws); *United States v. Savoie*, 594 F. Supp. 678, 684 (W.D. La. 1984) (stating defendant's failure to sign tax return, misrepresentations about eligibility to practice before the IRS, and advocacy of false tax loopholes constitutes substantial interference).

Appropriateness of Injunctive Relief

Having found that the Defendants violated subsection 6694 and engaged in conduct which substantially interfered with the proper administration of the tax laws, the Court must determine if, generally, injunctive relief is appropriate to prevent recurrence of the Defendants' conduct. *See* I.R.C. § 7407(b)(2). The Fifth Circuit, along with many other courts, has fashioned a five factor test for assessing the appropriateness of injunctive relief under section 7407.[7] *See*

---

[7] The Court need not resort to the traditional equitable factors - threat of irreparable harm to the movant, balancing of the harms, likelihood of success on the merits, and the public interest - in determining whether injunctive relief is appropriate. "When an injunction is explicitly authorized by statute, proper discretion usually requires its issuance if the prerequisites for the remedy have been demonstrated and the injunction would fulfill the legislative purpose." *United States v. Buttorff*, 761 F.2d 1056, 1059 (5th Cir. 1985); *see also Burlington N.R.R. Co. v. Dept. of Revenue*, 934 F.2d 1064, 1074-5 (9th Cir. 1991); *United States v. White*, 769 F.2d 511, 515 (5th Cir. 1985). Here, section 7407 explicitly authorizes the Court to enjoin individuals from engaging in certain conduct or from acting as an income tax return preparer. Furthermore, the Government is not seeking preliminary injunctive relief, but rather seeks a permanent injunction based on the merits of the case. Regardless, application of the traditional equitable factors in this case would clearly support injunctive relief.

*United States v. Buttorff*, 761 F.2d 1056, 1062-3 (5th Cir. 1985); *United States v. Bailey*, 789 F. Supp. 788, 816 (N.D. Tex. 1992); *see also United States v. Raymond*, 228 F.3d 804, 813 (7th Cir. 2000); *United States v. Kaun*, 827 F.2d 1144, 1149-50 (7th Cir. 1981). Under this test, a court must consider:

> [1] the gravity of the harm caused by the offense; [2] the extent of the defendant's participation and his degree of scienter; [3] the isolated or recurrent nature of the infraction and the likelihood that the defendant's customary business activities might again involve him in such transactions; [4] the defendant's recognition of his own culpability; and [5] the sincerity of his assurances against future violations.

*S.E.C. v. Holschuh*, 694 F.2d 130, 144 (7th Cir. 1982); *see also S.E.C. v. Blatt*, 583 F.2d 1325, 1334 n. 29 (5th Cir. 1978).

### A. The gravity of the harm

The gravity of the harm the Defendants caused is obvious. The Government estimates that the Defendants' use of fictitious expenses and deductions on almost 7,000 original income tax returns and on an unknown number of amended returns resulted in over $45 million in unpaid taxes. Although this preliminary figure is merely an estimate and may in fact be somewhat lower (or higher) once all of the returns are audited, the Defendants' customers, who now have to repay any unpaid taxes, will bear the bulk of the burden. This pecuniary loss is in addition to the emotional stress that taxes, generally, and especially unpaid taxes, tend to generate. Not to be forgotten is the administrative cost the IRS and, in turn, the general public, will suffer from having to audit each return the Defendants prepared. "The large number of returns the defendants prepared over several years which understate [their] clients' tax liabilities demonstrates the gravity of the harm [they] caused." *Bailey*, 789 F. Supp. at 816.

**B. The Defendants' participation and degree of scienter**

The Government's evidence describes how Ferrand initially devised and implemented a specific method of understating customers' tax liabilities and then, as the owner of "Mr. Ed's Tax Service," instructed Elliott and Kennedy, two of his employees, to do the same. Furthermore, given the obvious illegality of creating fictitious expenses and deductions, on top of the concerns several customers expressed regarding this practice, Elliott and Kennedy, as employees, cannot avail themselves of any "Nuremberg defense." So far as the undersigned can tell, each of the Defendants actively participated in the fraudulent conduct and was well aware of its illegality. In fact, even when customers began to complain to the Defendants about several IRS audits, the Defendants maintained that they had prepared the returns properly and offered up justifications best described as laughable. As an example, when one customer inquired about a pending audit, Ferrand instructed the customer not to appear for the audit because the IRS was an illegal organization and because only foreigners were subject to income tax. *See* Exhibit No. 22. Such utter disregard for the tax laws only permits the conclusion that the Defendants were fully aware of their actions.

**C. Isolated or recurrent nature of infraction and likelihood of recurrence**

Although a full audit of returns the Defendants prepared has not yet been completed, the IRS's auditors have encountered understated tax liabilities in nearly every return examined thus far. Clearly the Defendants' fraudulent conduct was not an isolated event limited to a few income tax returns; rather, it was part of an organized plan to solicit customers with promises of large refunds and to disguise their real tax liabilities with fictitious and inflated deductions. The widespread nature of the Defendants' conduct suggests that the "Internal Revenue Service cannot, without judicial intervention, effectively stop the defendants from engaging in their unlawful

behavior." *Bailey*, 789 F. Supp. at 818. Indeed, the strong likelihood of a recurrence of the Defendants' fraudulent conduct is evident from their perpetuation of the fraud despite customers' reports about being audited.

### D. Defendants' recognition of culpability

Although the Defendants have not responded to discovery requests and have failed to appear for depositions, the undersigned must presume, based on the general denials in the Defendants' answers, that they deny their culpability. Moreover, defendant Kennedy's opposition to the pending motion and his own frivolous motions to dismiss this matter amply demonstrate that he certainly does not recognize, or at least does not acknowledge, the wrongful nature of his conduct. On the contrary, he continues to justify his behavior and to claim that neither the IRS nor this court has authority to enter a judgment against him. Such denials and disobedience in the face of overwhelming evidence only indicates a blatant disregard for the tax laws and confirms that the Defendants interfered with the proper administration of the internal revenue laws.

### E. Sincerity of assurances against future violations

As stated above, the Defendants' general unresponsiveness and refusal even to participate in discovery, along with defendant Kennedy's clear demonstration of defiance of the authority of the IRS and the court, precludes any favorable judgment on this final factor. The Defendants have refused to admit any wrongdoing, much less give any assurances against any future wrongdoing. The Court is left to believe that, given the opportunity, the defendants would simply resume such conduct.

Viewing the totality of the Defendants' conduct under these five factors, it is apparent that injunctive relief, whether narrow or broad, is necessary to ensure that the Defendants refrain from

engaging in fraudulent conduct.

Type of Injunction Under Section 7407(b)(2)

Having decided that injunctive relief is appropriate, the Court must determine whether to enjoin the Defendants from merely engaging in fraudulent conduct or, as the Government requests, permanently enjoin the Defendants from acting as income tax return preparers. Section 7407(b)(2) of the Code provides that if a court finds that an income tax return preparer has (1) "continually or repeatedly" engaged in fraudulent conduct and (2) that an injunction prohibiting such conduct would be insufficient, then the court may permanently enjoin the person from acting as an income tax return preparer. *Id.*

The continuous and repetitive nature of the Defendants' fraudulent conduct is evident from the thousands of income tax returns they prepared in 2000 and 2001. Furthermore, the ineffectiveness of an injunction merely prohibiting them from engaging in that conduct is evident from the severity of their actions and their utter disregard for the tax laws. The Defendants continue to admit no wrongdoing despite the voluminous evidence that they actively solicited customers with promises of large refunds, manipulated or disregarded customers' taxable income, reported fictitious expenses and deductions, filed fraudulent returns, and then asserted fallacious justifications when questioned by their customers. This complete disregard for the tax laws suggests that permitting the Defendants to act as income tax return preparers in any capacity substantially increases the risk that, in the future, they may cause additional harm to customers, the Government, and the public. Finally, none of the Defendants have shown any remorse or culpability and each refuses to acknowledge any wrongdoing.

Therefore, it is recommended that the Government's motion for summary judgment be **GRANTED and that the Defendants, Ferrand, Elliott, and Kennedy, be permanently**

**enjoined from acting as income tax return preparers in any capacity.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 7th day of February, 2006.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE